UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITY OF LAUREL, MISSISSIPPI,<br><br>Plaintiff,<br><br>v.<br><br>CINTAS CORPORATION NO. 2<br><br>Defendant. | Case No. 3:21-cv-00124-LRH-CLB<br><br>ORDER |

Before the Court is Defendant Cintas Corporation No. 2's ("Cintas") motion to stay pending arbitration and in the alternative motion to transfer venue (ECF NO. 42). For the reasons articulated below, the Court denies Cintas's motions.

**I.    BACKGROUND**

In 2012 and 2018, U.S. Communities Government Purchasing Alliance ("U.S. Communities") aimed to "reduce the costs of goods by combining the volumes and the purchasing power of public agencies nationwide." To do so, it appointed two lead public agencies to solicit proposals for the cost of goods and services. Each agency issued a "Request for Proposals" ("RFP") that outlined the requirements for proposals, identified how the contract would be awarded, and provided information about the "Master Agreement." A key term of the RFPs and Master Agreements permitted participating public agencies ("PPAs") to utilize the terms of the Master Agreement for their own benefit. After evaluating the solicited proposals, both lead public agencies awarded the Master Agreement to Cintas. ECF No. 43. The City of Laurel, Mississippi ("Laurel") initiated this lawsuit on its own behalf and for a putative class of PPAs, claiming Cintas breached the contracts it entered to lease goods and provide services at a certain cost. ECF No. 1.

///

## II. DISCUSSION

Cintas asks the Court to compel arbitration of the breach of contract claims and, in the alternative, to transfer the case to the Southern District of Ohio. As explained below, the Court finds that the contracts do not require arbitration of the claims and a venue transfer is not necessary.

### A. Motion to Compel Arbitration

"Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). "If the answer to both questions is yes, then the FAA requires a court 'to enforce the arbitration agreement in accordance with its terms.'" *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir 2000)). When "parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 298 (2010) (quotations omitted).

However, "[t]here is no reason to distort the process of contract interpretation . . . in order to ferret out the inappropriate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627 (1985). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted). Thus, the contract should be interpreted according to general state law principles, "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016) (quotation omitted).

///
///
///
///
///

1. <u>2012 Master Agreement</u>

The 2012 Master Agreement includes three arbitration clauses. The parties do not dispute the validity of the arbitration clauses but rather whether the clauses encompass Laurel's claims.

The first arbitration agreement is found in the 2012 RFP disputes provision and states:

> Except as otherwise provided in these contractual documents, any claim, dispute, or other matter in question shall be referred to the Harford County Public Schools Supervisor of Purchasing, who shall decide the issue and provide a written response to the Contractor. The decision of the Supervisor of Purchasing shall be final and conclusive.
>
> The Contract shall be governed by the laws of the State of Maryland and nothing in this contract shall be interpreted to preclude the parties seeking any and all remedies provided by law. All protests must be in writing and submitted to the Supervisor of Purchasing. Prior to dispute resolution through the appropriate legal means, i.e., adjudicated by the appropriate Courts, the parties will participate in Alternative Dispute Resolution (ADR), in an attempt to resolve the dispute in accordance with the commercial Rules of the American Arbitration Association in effect at the time. All disputes shall be decided by a single arbitrator. All costs associated with ADR will be borne by the Awarded Contractor.

ECF No. 43-2 at 6. The Master Agreement incorporates the RFP dispute provision and then provides terms relating to disputes involving PPAs:

> **H. Governing Law:** This contract shall be interpreted under and governed by the laws of the State of Maryland. Disputes will be settled as per the stipulations contained within the Request for Proposal.
>
> …
>
> **K. Participating Public Agencies:** . . . Each participating Public Agency will be exclusively responsible and deal directly with Supplier on matters relating to ordering, delivery, inspection, acceptance, invoicing, and payment for products and services in accordance with the terms and conditions of this Master Agreement. Any disputes between a Participating Public Agency and Supplier will be resolved directly between them in accordance with and governed by the laws of the State in which the Participating Public Agency exists.

ECF No. 43-1 at 3–4.

It is clear to the Court that provision K displaced the dispute resolution terms that the lead public agency and Cintas agreed upon by stating, "Any disputes between a Participating Public Agency and Supplier will be resolved *directly between them* in accordance with and governed by the laws of the State in which the Participating Public Agency exists." Provision K echoes provision H in that it provides that (1) the laws of the State in which the PPA exists govern the

3

contract; and (2) disputes are handled directly between Cintas and the PPA. However, notably absent from the disputes provision regarding PPAs is an arbitration clause. The Court finds that this was intentional to allow disputes to be handled and negotiated directly between the PPA and Cintas under the terms they agreed upon. The arbitration clause in the RFP disputes provision governs Cintas's relationship with the lead public agency, not with Laurel or other PPAs. Thus, it does not require the Court to compel arbitration.

The second arbitration agreement is found in the Administration Agreement that governs the RFP and Master Agreement. However, the Administration Agreement is clear that the arbitration clause applies to claims arising from only the Administration Agreement. The arbitration clause states:

> This Agreement will be governed by and interpreted in accordance with the laws of the State of California without regard to any conflict of laws principles. Any dispute, claim or controversy arising out of or relating to this Agreement . . . shall be determined by arbitration in Walnut Creek, California, before one (1) arbitrator.

ECF No. 43-2 at 43. The Administration Agreement defines "this Agreement" as referring to the Administration Agreement itself. *Id.* at 35. Thus, this arbitration clause does not require the Court to order arbitration because the breach of contract claims do not arise from the Administration Agreement.

The last arbitration agreement is found within the fourth amendment to the Master Agreement, which incorporates Cintas's "Direct Sale Terms & Conditions" into the Master Agreement. ECF No. 43-1 at 16–17 ("Any dispute or matter arising in connection with or relating to this agreement shall be resolved by binding and final arbitration."). However, the fourth amendment is clear that its terms apply to only the Direct Sale program. The amendment documents repeatedly identify the terms and conditions as the Direct Sale uniform program's terms and conditions. In addition, they explicitly reference the Direct Sale program in five of the provisions and the use of trademarks for the *sale* of products in another. Though other provisions that do not contain a reference to the sale of products could be classified as "general," the only plausible interpretation is that they are limited to the direct sale program given the context in which they are found. Therefore, the fourth amendment is inapplicable to the breach of contract claims

4

and does not require the Court to compel arbitration because the dispute at hand involves claims regarding only the lease of goods.

As explained above, none of the arbitration clauses found in the 2012 Master Agreement encompass the dispute at hand. Accordingly, the Court will not compel arbitration for breach of contract claims arising under the 2012 Master Agreement.

2. 2018 Master Agreement

The 2018 Master Agreement is largely silent on arbitration and incorporates an arbitration clause in only the Administration Agreement. ECF No. 43-5 at 65. However, the Administration Agreement is clear that the arbitration clause applies to claims arising under only the Administration Agreement. *Id.* at 56, 65. Therefore, the Court will not order arbitration of the breach of contract claims arising from the 2018 Master Agreement.

3. Conclusion

As explained above, neither the 2012 Master Agreement nor the 2018 Master Agreement arbitration clauses apply to the breach of contract claims. Accordingly, the Court denies Cintas's motion to compel arbitration.

**B. Change of Venue**

In the alternative, Cintas asks the Court to transfer this case to the Southern District of Ohio. Under 28 U.S.C. § 1404(a), a court may, for the convenience of parties and witnesses and in the interest of justice, transfer any civil action to any other district where it might have been brought. The district court has broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). A party seeking to transfer venue pursuant to § 1404 bears the burden of establishing that (1) the proposed district is a proper venue where the case might have been brought; and (2) the proposed district is a "more appropriate forum for the action." *See Operation: Heroes, Ltd. v. Proctor and Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1111 (D. Nev. 2012); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). This burden requires the party seeking transfer to "make a strong showing of inconvenience to warrant upsetting the

plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

In determining whether the transferee district would promote the convenience of parties and witnesses, and serve the interests of justice, district courts in the Ninth Circuit consider the following case-specific factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99.

Though the Southern District of Ohio is a proper venue under 28 U.S.C. § 1391, the Court finds that the transfer of the case is not warranted under 28 U.S.C. § 1404(a) and the *Jones* factors.

1. Location Where the Relevant Agreements Were Negotiated and Executed

Johnny Magee, the Mayor of Laurel, submitted a declaration clearly negating the possibility that the contract was negotiated in Ohio. His declaration stated that the solicitation for bids occurred within Mississippi and, once Cintas submitted its bid, key events of the negotiation process occurred within Mississippi, including where Magee signed the contract. Notably, no representative of Laurel ever traveled to Ohio to negotiate the contract or communicated with Cintas employees located in Ohio. Rather, all communications were with Cintas employees located within Mississippi. Under the current record, this factor does not weigh in favor of Ohio and must be considered neutral.

2. State that is Most Familiar with the Governing Law

This factor is neutral. A federal judge in either the District of Nevada or the Southern District of Ohio could interpret and apply the contract law of other states.

///

///

6

### 3. Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is afforded significant deference in a motion to transfer venue. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But the amount of deference may vary in the context of a class action lawsuit based on "the extent of both [parties'] contacts with the forum, including those relating to [the] cause of action." *Id.* "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, the [plaintiff's] choice is entitled to only minimal consideration." *Id.*

As explained below, the parties' contacts with the forum factor is neutral but the contacts relating to the plaintiff's cause of action in the chosen forum factor weighs slightly in favor of venue transfer. However, Nevada does have an interest in this case, so Plaintiff's choice of forum is entitled to at least some deference.

### 4. Respective Parties' Contacts with the Forum

The record indicates that Laurel does not have contacts with either the District of Nevada or Southern District of Ohio. Laurel is located in Mississippi, and its only connection to Nevada is this suit. However, Cintas has contacts with both states because it is incorporated in Nevada and has its principal place of business in Ohio. Neither contact with Nevada or Ohio outweighs the other. Thus, this factor is neutral.

### 5. Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

This factor weighs slightly in favor of transfer. Laurel's cause of action and the proposed class action have little to no contacts relating to Nevada because the contracts were not negotiated, executed, or performed in Nevada. As discussed above, the location of where the contracts were negotiated and executed is not clear from the record. However, Ohio has at least some contacts with Laurel's cause of action because Cintas's employees are located there. Accordingly, this factor weighs slightly in favor of transfer.

### 6. Differences in the Costs of Litigation in the Two Forums

Cintas has not demonstrated that litigating this case in Nevada would be significantly more inconvenient or cost more than litigating in Ohio. Litigating in either forum will require employees, witnesses, and counsel for both parties to travel.

7. <u>Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses</u>

This factor is neutral. As both parties acknowledged, the case is insufficiently advanced to identify non-party witnesses whose participation may be required.

8. <u>Ease of Access to Sources of Proof</u>

With modern technology, either of the proposed districts would have easy access to sources of proof in this case because the main sources of evidence will be documents detailing the agreements and relevant sales that are almost certainly stored in electronic databases. Thus, this factor does not favor either forum.

9. <u>Public Policy</u>

In addition to the *Jones* factors, the Court may consider whether public policy favors transfer. The Court finds that it does not. Cintas alleges that "Ohio has a strong public policy interest in hearing claims against companies that reside within its borders and conduct their operations in the State." However, the same is true about Nevada: It has a strong public policy interest in regulating the corporations that avail themselves of the benefits of being a Nevada corporation. Thus, Ohio's and Nevada's interest in regulating Cintas neutralizes this factor.

After considering all relevant factors, the Court finds that Cintas has not met its burden of showing that convenience and the interest of justice heavily favors transfer of venue. Accordingly, the Court denies Cintas's motion to transfer venue.

IV. **CONCLUSION**

IT IS THEREFORE ORDERED that Cintas's motion to compel arbitration and alternative motion to transfer venue are denied.

IT IS SO ORDERED.

DATED this 3rd day of March, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE