F. McClure Wallace, Esq.
Nevada Bar No.: 10264
Patrick R. Millsap, Esq.
Nevada Bar No.: 12043
**WALLACE & MILLSAP**
510 W Plumb Ln., Ste. A
Reno, Nevada 89509
(775) 683-9599
mcclure@wallacemillsap.com
patrick@wallacemillsap.com

Warren Burns (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

(Additional Counsel on Signature Block)

*Counsel for Plaintiff City of Laurel, Mississippi*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**NORTHERN DIVISION**

| | |
|---|---|
| CITY OF LAUREL, MISSISSIPPI, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CINTAS CORPORATION NO. 2<br><br>Defendants. | Case No. 3:21-cv-00124-ART-CLB<br><br>**NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:00 p.m. on April 25, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Anne R. Traum, located at the Lloyd D. George Federal District Courthouse, 333 S. Las Vegas

Blvd, Las Vegas, NV 89101, Plaintiff City of Laurel, Mississippi ("the City") will and hereby does move for an order of the Court:

1. Granting final approval of the proposed class action settlement on the terms and conditions set forth in the Class Action Settlement Agreement;

2. Certifying the Settlement Class for settlement purposes;

3. Finding that the form, contents, and manner of providing class notice satisfies due process and Federal Rule of Civil Procedure 23;

4. Authorizing all payments provided for in the Settlement Agreement;

5. Barring Plaintiff and Settlement Class Members from asserting any of the Released Claims, as set forth in Section 12 of the Settlement Agreement, including during any appeal from the Final Approval Order;

6. Releasing Defendant and the Released Parties from the Released Claims, as set forth in Section 12 of the Settlement Agreement; and

7. Reserving the Court's continuing and exclusive jurisdiction over the Parties to the settlement agreement, including Plaintiff, Defendant, and all Settlement Class Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

Plaintiff's unopposed Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Warren Burns, all other documents filed in support of this motion, and the papers and pleadings on file in this action.

Dated this April 10, 2025.          Respectfully submitted,

/s/Warren Burns

*Wallace & Millsap*
510 W Plumb Ln., Reno, Nevada / (775) 683-9599

F. McClure Wallace, Esq.
Nevada Bar No.: 10264
Patrick R. Millsap, Esq.
Nevada Bar No.: 12043
**WALLACE & MILLSAP**
510 W Plumb Ln., Ste. A
Reno, Nevada 89509
(775) 683-9599
mcclure@wallacemillsap.com
patrick@wallacemillsap.com

Warren Burns (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

Korey A. Nelson (admitted *pro hac vice*)
Amanda Klevorn (admitted *pro hac vice*)
Natalie Earles (admitted *pro hac vice*)
**BURNS CHAREST LLP**
201 St. Charles Avenue, Suite 2900
New Orleans, LA 70170
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
aklevorn@burnscharest.com
nearles@burnscharest.com

Charles D. Gabriel (admitted *pro hac vice*)
**CHALMERS & ADAMS, LLC**
1409 Silverling Way
Raleigh, NC 27613
Telephone: (678) 735-5903
Facsimile: (678)582-8910
cdgabriel@chalmersadams.com

*Counsel for Plaintiff City of Laurel,
Mississippi*

Wallace & Millsap
510 W Plumb Ln., Reno, Nevada / (775) 683-9599

F. McClure Wallace, Esq.
Nevada Bar No.: 10264
Patrick R. Millsap, Esq.
Nevada Bar No.: 12043
**WALLACE & MILLSAP**
510 W Plumb Ln., Ste. A
Reno, Nevada 89509
(775) 683-9599
mcclure@wallacemillsap.com
patrick@wallacemillsap.com

Warren Burns (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

(Additional Counsel on Signature Block)

*Counsel for Plaintiff City of Laurel, Mississippi*

i

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**NORTHERN DIVISION**

| | |
|---|---|
| CITY OF LAUREL, MISSISSIPPI, on behalf of itself and all others similarly situated,<br><br>                                        Plaintiff,<br><br>            v.<br><br>CINTAS CORPORATION NO. 2<br><br>                                        Defendants. | Case No. 3:21-cv-00124-ART-CLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wallace & Millsap*
510 W Plumb Ln., Reno, Nevada / (775) 683-9599

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 3

   A.  Preliminary Approval of the Settlement and Conditional Certification of the Settlement Class ........................................................................................... 3

   B.  Notice Was Provided to the Class and the Claim Period Has Concluded ... 4

III.  ARGUMENT ...................................................................................................... 5

   A.  The Court Should Certify the Settlement Class ............................................ 5

      1.  Rule 23(a)'s Prerequisites are Satisfied ................................................ 5

         a.  The Settlement Class is sufficiently numerous ............................... 6

         b.  There are common questions of law and fact among the Settlement Class ................................................................................................. 6

         c.  The City's claims are typical of the Settlement Class's claims ....... 7

         d.  The City adequately protects the interests of the Settlement Class ................................................................................................. 8

      2.  Certification is Appropriate Under Rule 23(b)(3) ................................. 9

         a.  Common issues of law and fact predominate over individual issues ............................................................................................... 9

         b.  Class treatment is the superior method of adjudication ............... 11

   B.  The Settlement is Fair, Reasonable, and Adequate, and the Settlement Agreement Should be Approved ................................................................ 13

      1.  The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation Support Final Approval ..................... 14

      2.  The Amount Offered in the Settlement Supports Final Approval ....... 15

      3.  The Extent of Discovery and the Stage of the Proceedings Support Final Approval ............................................................................................. 17

      4.  The Experience and Views of Counsel Support Final Approval .......... 18

      5.  The Presence of a Governmental Participant Supports Final Approval ........................................................................................... 19

      6.  The Reaction of the Class Supports Final Approval ............................ 20

      7.  The Settlement Is Not the Product of Collusion .................................. 20

   C.  The Best Notice Practicable Was Given to All Class Members ................. 21

IV.  CONCLUSION ................................................................................................ 23

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. University of Phoenix,*
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ...................................................... 19

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................... 9

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,*
  568 U.S. 455 (2013) .......................................................................... 9, 10

*Barbosa v. Cargill Meat Solutions Corp.,*
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................. 18

*Briseño v. Henderson,*
  998 F.3d 1014 (9th Cir. 2021) ........................................................... 13, 22

*Carlotti v. ASUS Computer Int'l,*
  No. 18-03369, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ............... 14, 17

*Churchill Village, L.L.C. v. General Electric,*
  361 F.3d 566 (9th Cir. 2004) ........................................................... *passim*

*Cummings v. Connell,*
  316 F.3d 886 (9th Cir. 2003) ................................................................... 8

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ............................................................................... 5

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) ................................................................... 7

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  563 U.S. 804 (2011) ............................................................................... 9

*Evon v. Law Offices of Sidney Mickell,*
  688 F.3d 1015 (9th Cir. 2012) ................................................................. 8

*Glass v. UBS Financial Services Inc.,*
  331 F. App'x 452 (9th Cir. 2009) .............................................................. 8

*Greene v. Jacob Transportation Services, LLC,*
  No. 2:09-cv-00466-GMN-CWH, 2017 WL 4158605 (D. Nev. Sept. 19, 2017) ......... 11

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  573 U.S. 258 (2014) ............................................................................. 10

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 7, 14, 20

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ................................................................... 7

*Heid v. CyraCom Int'l, Inc.,*

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

Case No. 22-cv-1445-MMA (KSC), 2024 WL 4008650 (S.D. Cal. Aug. 30, 2024)... 20

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011) ............................................................... 13, 20

*In re High-Tech Employee Antitrust Litigation*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ...................................................... 8

*In re Lidoderm Antitrust Litigation*,
Case No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)............ 10

*In re LinkedIn User Privacy Litigation*,
309 F.R.D. 573 (N.D. Cal. 2015) ................................................... 16, 19, 20

*In re Lithium Ion Batteries Antitrust Litig.*,
853 F. App'x 56 (9th Cir. 2021)............................................................. 22

*In re Mego Financial Corp. Securities Litigation*,
213 F.3d 454 (9th Cir. 2000) ............................................................... 14

*In re TracFone Unlimited Service Plan Litigation*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................... 14

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
571 F.3d 953 (9th Cir. 2009) ............................................................... 10

*Johnson v. City of Grants Pass*,
50 F.4th 787 (9th Cir. 2022)................................................................. 6

*Jordan v. Paul Financial, LLC*,
285 F.R.D. 435 (N.D. Cal. 2012) ........................................................... 12

*Kaupelis v. Harbor Freight Tools USA Inc.*,
2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ............................................... 22

*Lane v. Facebook, Inc.*,
686 F.3d 811 (9th Cir. 2012) ............................................................... 13

*Le v. Zuffa, LLC*,
Case No. 2:15-cv-01045-RFB-BNW, 2023 WL 5085064 (D. Nev. Aug. 9, 2023)....... 6

*Leyva v. Medline Industries, Inc.*,
716 F.3d 510 (9th Cir. 2013) ........................................................... 10, 11

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998) .............................................................. 16

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ............................................................... 9

*Miller v. Wise*,
2020 WL 1129863 (C.D. Cal. Feb. 11, 2020) ............................................... 13

*Natural Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)............................................................ 15

*Officers for Justice v. Civil Service Commission of San Francisco*,

*Wallace & Millsap*

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

v

688 F.2d 615 (9th Cir. 1982) ................................................ 14, 16, 20

*Rannis v. Recchia,*
380 F. App'x 646 (9th Cir. 2010) ........................................... 6, 22

*Rodriguez v. West Publishing Corp.,*
563 F.3d 948 (9th Cir. 2009) .......................................... 14, 17, 20, 22

*Ruiz Torres v. Mercer Canyons, Inc.,*
835 F.3d 1125 (9th Cir. 2016) .................................................... 10

*Silber v. Mabon,*
18 F.3d 1449 (9th Cir. 1994) .................................................... 22

*Sobel v. Hertz Corp.,*
291 F.R.D. 525 (D. Nev. 2013) ................................................... 7

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ................................................ 5, 14

*True v. American Honda Motor Co.,*
749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................................ 19

*Tyus v. Wendy's of Las Vegas, Inc.,*
No. 14-cv-00729-GMN-VCF, 2021 WL 2169928 (D. Nev. May 27, 2021) ......... 13, 17

*Van Lith v. iHeart Media + Entertainment, Inc.,*
Case No. 1:16–cv–00066–SKO, 2017 WL 1064662 (E.D. Cal. Mar. 20, 2017) . 18, 19

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ............................................................ 6

*Wolin v. Jaguar Land Rover North America LLC,*
617 F.3d 1168 (9th Cir. 2010) ............................................. 11, 12

*Zakikhani v. Hyundai Motor Co.,*
2023 WL 4544774 (C.D. Cal. May 5, 2023) ...................................... 14

**Rules**

Fed. R. Civ. P. 23 .................................................... *passim*

Wallace & Millsap
510 W Plumb Ln., Reno, Nevada / (775) 683-9599

vi

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff the City of Laurel, Mississippi (the "City") seeks final approval of the Settlement, which resolves claims against Defendant Cintas Corporation No. 2 ("Cintas") for alleged breach of its agreements with OMNIA Partners ("OMNIA") (formerly known as U.S. Communities Government Purchasing Alliance) Participating Public Agencies ("PPAs") for products and services that "piggyback" onto Cintas's Master Agreement No. 12-JLH-011C with Harford County, Maryland, effective April 1, 2012 (the "Harford County Master Agreement" or "2012 Master Agreement") or Cintas's Master Agreement with Prince William County, Virginia, Contract No. R-BB-19002, effective December 13, 2018 (the "Prince William County Master Agreement" or "2018 Master Agreement") by billing PPAs amounts that exceeded pricing authorized under those agreements. *See* ECF No. 36, First Am. Class Action Compl. ("Compl."), ¶¶ 47–49.

The proposed Settlement Agreement provides substantial monetary relief to the Settlement Class, including a non-reversionary $45 million cash fund, and additional relief, including $5 million allocated for Cintas's enhancement of its policies, procedures, and systems related to local agreements with PPAs that piggyback onto master agreements administered by OMNIA. *See* Settlement Agreement submitted herewith ("Settlement Agreement"), Ex. A at 15 ¶¶ 5.2–5.3.[1]

---

[1] Any capitalized terms used but not defined herein have the meaning given to them in the Settlement Agreement. *See generally* Settlement Agreement, Ex. A.

Wallace & Millsap

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

Wallace & Millsap

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Settlement was achieved after significant pre-suit investigation, more than two years of litigation, including an appeal to the United States Court of Appeals for the Ninth Circuit, and over one year of arm's-length settlement negotiations. The City and its counsel have vigorously prosecuted this action on behalf of the Settlement Class and—following the exchange of discovery, extensive, arm's-length negotiations, and a settlement conference with the Honorable Judge Robert A McQuaid, Jr.—have developed an understanding of the strengths and weaknesses of the action. Notwithstanding its confidence in the merits of its claims, the City recognizes the challenges and risks inherent in proceeding through litigation and proving its claims at trial. Based on the City's counsel's and experts' analyses of the documents and data provided by Cintas as part of confirmatory discovery—including voluminous revenue and pricing data—the City and its counsel believe that the settlement is favorable to the Settlement Class, and is more than fair, reasonable, and adequate.

This Settlement ensures that Class members receive comprehensive benefits that address their interests now, bypassing the uncertainties and risks associated with prolonged litigation that might not yield any relief for years to come. Class members have also received the best notice practicable of the Settlement through multiple channels in accordance with Rule 23 and this Court's preliminary approval order. To date, there have been **no objections** to the settlement and **only one request for exclusion**.

Accordingly, the City respectfully requests that this Court enter an order: (1) granting final approval of the Settlement Agreement; (2) certifying the Settlement

Class for settlement purposes only; (3) finding that the class notice satisfies due process requirements; (4) authorizing all payments provided for in the Settlement Agreement; (5) barring Plaintiff and Settlement Class Members from asserting any of the Released Claims, as set forth in Section 12 of the Settlement Agreement, including during any appeal from the Final Approval Order; (6) releasing Defendant and the Released Parties from the Released Claims, as set forth in Section 12 of the Settlement Agreement; and (7) reserving the Court's continuing and exclusive jurisdiction over the Parties to the Settlement Agreement, including Plaintiff, Defendant, and all Settlement Class Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

## II.    BACKGROUND

### A.    Preliminary Approval of the Proposed Settlement and Conditional Certification of the Settlement Class

On October 8, 2024, the City filed its motion seeking preliminary approval of the class action settlement, conditional certification of the settlement class, appointment of the class representative, class counsel, and settlement administrator, and approval of the notice plan. *See* ECF No. 114 (the "Preliminary Approval Motion"). Plaintiff's Preliminary Approval Motion summarized Plaintiff's allegations, chronicled the history of the litigation and the negotiations that led to the proposed Settlement, and detailed the extensive benefits that the proposed Settlement Agreement provides to the Class. *See id.* at 12–18.  Rather than reproduce here the pages of facts set forth in the Preliminary Approval Motion, Plaintiff incorporates that material by reference. On December 31, 2024, the Court granted the Preliminary

Approval Motion and ordered dissemination of notice to the Class pursuant to the Settlement's notice plan (the "Order"). *See* ECF No. 115.

### B. Notice Was Provided to the Class and the Claim Period Has Concluded

Defendant, along with Angeion, the Settlement Administrator, provided Notice to the Class in accordance with the Settlement Agreement and the Court's Order. *See* Declaration of Baro Lee Re: Notice and Administration ("Lee Decl."), ECF No. 116. Postcard notices were mailed to the 95,030 Class Members that had valid mailing addresses. *See id*. Of the 2,521 notices returned by the USPS as undeliverable, 1,399 were re-mailed to updated addresses either provided by USPS or identified through a skip trace process. *See id*. Reminder notices were also mailed to Class Members who had not submitted claim forms as of March 3, 2025. *See id*. Email notice containing a copy of the Class Notice in the body of the email and links to the settlement website and the claims administrator's phone numbers was sent to 22,685 Class Members who had valid email addresses. *See id*. A reminder email notice was sent to Class Members who had valid email addresses and who had not submitted claim forms as of February 26, 2025. *See id*. Angeion also established Settlement-dedicated phone lines to field Class member inquiries regarding the Settlement. *See id*. Angeion launched the settlement website (www.CityOfLaurelSettlement.com) on or about January 30, 2025. *See id*. The mail notice, re-mail notice, email notice, and email reminder notice to the 95,032 total Class Members resulted in a cumulative successful delivery rate of roughly 92,875 (97.73%) and undeliverable rate of 2,157 (2.27%). *See id*.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

## III.    ARGUMENT

### A.  The Court Should Certify the Settlement Class

The parties seek certification, solely for purposes of judgment on the proposed Settlement, of a Settlement Class comprised of:

> any Participating Public Agency, including state and local governments, school boards, institutions of higher education, and non-profit organizations, that entered into Local Agreements with Cintas for products or services that "piggybacked" onto the Harford County Master Agreement or the Prince William County Master Agreement during the Class Period [April 1, 2012 through December 31, 2024, the date that the Court entered the Preliminary Approval Order]

Settlement Agreement, Ex. A at 5, 10 ¶¶ 2.14, 2.43. In its Order, the Court found that the Settlement "is likely to be certified as a class for settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure." ECF No. 115 at 3. Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received.

In reviewing a class action settlement, the "court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The fundamental question is "whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The City contends, and Cintas does not dispute for settlement purposes, that the proposed Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(3).

### 1.    Rule 23(a)'s Prerequisites are Satisfied

The four prerequisites to class certification imposed by Rule 23(a)— numerosity, commonality, typicality, and adequacy—are satisfied here. *See* Fed. R. Civ. P. 23(a).

5

**a.    The Settlement Class is sufficiently numerous.**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no specific number of class members required." *Johnson v. City of Grants Pass*, 50 F.4th 787, 803 (9th Cir. 2022). "However, proposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large." *Id. See also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (While "[t]he numerosity requirement is not tied to any fixed numerical threshold," courts generally "find the numerosity requirement satisfied when a class includes at least 40 members."). Cintas identified 95,032 Class Members through its customer records. *See* Lee Decl., ECF No. 116 ¶ 7. This large number of members spread across the country makes joinder impracticable, and therefore, numerosity is satisfied.

**b.    There are common questions of law and fact among the Settlement Class.**

Rule 23(a)(2) requires that there be one or more "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The common issues do not need to be legally and factually identical." *Le v. Zuffa, LLC*, Case No. 2:15-cv-01045-RFB-BNW, 2023 WL 5085064, at *10 (D. Nev. Aug. 9, 2023); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation omitted) (explaining that an issue is "common" if "it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."). Further, "not all questions of fact and law need be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Dukes*, 564 U.S. at 338. The "existence of

1    shared legal issues with divergent factual predicates is sufficient, as is a common core

2    of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150

3    F.3d at 1019–20.

4         Issues common to all proposed Class Members here include whether Cintas

5    entered into the 2012 and 2018 Master Agreements, executed Amendments No. 1–6

6    to the 2012 Master Agreement, executed Amendments No. 1–11 to the 2018 Master

7    Agreement, bound itself to extend the pricing established in the 2012 and 2018

8    Master Agreements to any PPA, entered into contracts with PPAs that piggybacked

9    on the 2012 and 2018 Master Agreements, and charged PPAs more than the prices

10   established in the 2012 and 2018 Master Agreements. All Settlement Class Members'

11   claims will be resolved by answering these common questions. Commonality is

12   satisfied.

13

14              **c.    The City's claims are typical of the Settlement**
                        **Class's claims.**

15

16        Rule 23(a)(3) requires the claims of the proposed representative party to be

17   typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is

18   whether other members have the same or similar injury, whether the action is based

19   on conduct which is not unique to the named plaintiffs, and whether other class

20   members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale*

21   *Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976

22   F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the nature of the claim or defense

23   of the class representative, and not to the specific facts from which it arose or the

24   relief sought." *Id.; see also Sobel v. Hertz Corp.*, 291 F.R.D. 525, 541 (D. Nev. 2013)

25   (typicality satisfied where "the class members' claims arise from a standard practice

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

and implicate common legal questions"), *affirmed in part*, 674 F. App'x 663, 666 (9th Cir. 2017) (affirming class certification).

Here, the City's claims are based on the same legal theory and course of conduct as the Class Members' claims—Cintas' alleged breach of contracts it entered with the City and other PPAs that piggybacked on the 2012 and 2018 Master Agreements. The City's claims are typical of the claims of the Settlement Class it seeks to represent.

### d. The City adequately protects the interests of the Settlement Class.

Rule 23(a)(4) requires the representative party to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry turns on whether (1) "the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) "the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

Here, the City's interests are fully aligned with those of absent Class Members in obtaining relief for Cintas' alleged breach of contract and ensuring that Cintas reforms its business practices. *See Glass v. UBS Fin. Servs. Inc.*, 331 F. App'x 452, 455 (9th Cir. 2009) (affirming class with shared interest in compensation for allegedly unlawful practices); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (finding adequacy where "named Plaintiffs and [absent] Class members share an interest in proving that Defendants' conduct violated the antitrust laws and suppressed their compensation"). Neither the City nor its counsel have interests antagonistic to those of other Class Members. *See Cummings v. Connell*,

Wallace & Millsap

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

316 F.3d 886, 896 (9th Cir. 2003) (explaining that the Ninth Circuit does "not favor denial of class certification on the basis of speculative conflicts"). In addition, the City and Class Counsel have vigorously pursued the interests of the proposed Class for over four years and will continue to do so. *See* Burns Decl. ¶¶ 23–24.

### 2.    Certification is Appropriate Under Rule 23(b)(3)

The requirements for certification under Rule 23(b)(3)—predominance and superiority—are also satisfied here. *See* Fed. R. Civ. P. 23(b)(3) (requiring "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.").

### a.    Common issues of law and fact predominate over individual issues.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Loc. Joint Exec. Bd. of Culinary / Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Consideration of "whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Not every element must be susceptible to common proof. *See Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim

is susceptible to class wide proof."); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("While [the defense] has the effect of leaving individualized questions of reliance in the case, there is no reason to think that these questions will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)."). The rule simply demands "that common questions predominate over any questions affecting only individual class members." *Amgen Inc.*, 568 U.S. at 459. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

Accordingly, courts have certified classes even where some elements of the claim may give rise to individualized issues, such as proof of injury or damages. *See, e.g., Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016) (affirming class certification because common issues predominated in the case as a whole, even though fact of injury was an element of plaintiffs' claims and they had not shown it was common to the class); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) (finding common issues predominated in case as a whole despite individualized damages issues); *In re Lidoderm Antitrust Litig.*, Case No. 14-md-02521-WHO, 2017 WL 679367, at *1 (N.D. Cal. Feb. 21, 2017) (concluding common questions predominated even though "determining whether any particular plaintiff was injured and how to apportion damages between the plaintiffs necessarily involves individualized questions that are undeniably complex").

Here, common questions predominate because there are few individualized factual issues, and the core elements of the City's and Class Members' claims can be established on a class-wide basis. Specifically, to prove their breach of contract

Wallace & Millsap

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

claims, the City and Class Members must establish the existence of valid agreements piggybacking on the 2012 and/or 2018 Master Agreements, Cintas's contractual duty to charge the prices established in the 2012 and/or 2018 Master Agreements, Cintas's breach of that duty by overcharging the City and Class Members, and damages suffered as a result of Cintas's breach. Because every PPA's piggyback contract incorporated the pricing established in the 2012 and 2018 Master Agreements by reference, the same evidence can establish Cintas's contractual duty. Likewise, because the 2012 and 2018 Master Agreements obliged Cintas to charge those prices uniformly, its breach of those obligations can likewise be established on a class-wide basis. Determining the extent to which Cintas overcharged a particular PPA by invoicing for more than the price in the relevant master agreement only requires analyzing Class Members' invoice pricing against the pricing set forth in the 2012 and 2018 Master Agreements and does not preclude certification. *See Leyva*, 716 F.3d at 514 ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *Greene v. Jacob Transp. Servs., LLC*, Case No. 2:09-cv-00466-GMN-CWH, 2017 WL 4158605, at *5 (D. Nev. Sept. 19, 2017) (same).

> **b.    Class treatment is the superior method of adjudication.**

A class action is "superior to other available methods for fairly and efficiently adjudicating" this controversy. Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Without class treatment, each individual PPA would have to separately prove the validity of both the 2012 and 2018 Master

Wallace & Millsap

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

Agreements and its individual piggyback agreement, that Cintas bound itself to extend the same pricing contained in the 2012 and 2018 Master Agreements to any PPA, and that Cintas charged more than the prices set forth in the 2012 and 2018 Master Agreements. "It is far more efficient to litigate" these fundamental issues "on a class-wide basis rather than in thousands of individual and overlapping lawsuits." *Id.* at 1176. *See also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 467 (N.D. Cal. 2012) (internal quotation marks and citation omitted) ("[A] single action would be superior to maintaining a multiplicity of individual actions involving similar legal and factual issues.")

Further, there is no realistic alternative to a class action here: individual lawsuits by Class Members would be inefficient, and most members would find the cost of litigating individual claims to be prohibitive. See *Wolin*, 617 F.3d at 1176 ("Proposed class members face the option of participating in this class action, or filing hundreds of individual lawsuits that could involve duplicating discovery and costs that [potentially] exceed the extent of proposed class members' individual injuries."). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis," like here, "this factor weighs in favor of class certification." *Id.* at 1175. Class treatment, in contrast, provides an opportunity for an efficient and expeditious resolution.

For all the reasons stated herein and in the Order, Plaintiff respectfully requests that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

**B. The Settlement Is Fair, Reasonable, and Adequate, and the Settlement Agreement Should be Approved**

Final approval of a class action settlement asks the Court to "evaluate the fairness of a settlement as a whole," and find that the settlement is "'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 686 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)). In the Ninth Circuit, this determination is guided by the so-called *Churchill* factors and the considerations set forth in Rule 23(e)(2). *See Tyus v. Wendy's of Las Vegas, Inc.*, 2021 WL 2169928, at *5 (D. Nev. May 27, 2021) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) ("The factors in a court's fairness assessment will naturally vary from case to case, but courts in the Ninth Circuit generally must weigh the *Churchill* factors."); *Briseño v. Henderson*, 998 F.3d 1014, 1022–24 (9th Cir. 2021) (directing district courts to apply the Rule 23(e) factors in addition to those judicially created). The *Churchill* factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946 (quoting *Churchill Vill., L.L.C.,* 361 F.3d at 575).

No one factor is decisive or even necessarily appropriate for consideration in every class action settlement. *Miller v. Wise*, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020). Rather, "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement

Wallace & Millsap

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

13

1   must stand or fall in its entirety." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir.

2   2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Where,

3   as here, a settlement is reached prior to formal class certification, the Court must

4   also consider whether the settlement is the "product of collusion among negotiating

5   parties." *Bluetooth Headset*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*,

6   213 F.3d 454, 458 (9th Cir. 2000)).

7

8          **1.  The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation Support Final Approval**

9

10       With respect to the first three *Churchill* factors, the Court must weigh "the

11   plaintiff's likelihood of success on the merits and the range of possible recovery versus

12   the risks of continued litigation and maintaining class action status through the

13   duration of the trial." *Carlotti v. ASUS Comput. Int'l*, No. 18-03369, 2019 WL

14   6134910, at *4 (N.D. Cal. Nov. 19, 2019). "These factors weigh in favor of approving

15   settlement when the defendant has 'plausible defenses that could have ultimately left

16   class members with a reduced or non-existent recovery.'" *Id.* (quoting *In re TracFone*

17   *Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015)).

18

19       "No one formula governs the Court's determination of the likelihood of

20   Plaintiff's success, which the Ninth Circuit has described as 'nothing more than an

21   amalgam of delicate balancing, gross approximations and rough justice.'" *Zakikhani*

22   *v. Hyundai Motor Co.*, 2023 WL 4544774, at *4 (C.D. Cal. May 5, 2023) (quoting

23   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for*

24

25   *Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982))).

26

27       Although the City is confident in the strength of its claims and its ability to

28   ultimately prevail at trial, it nevertheless recognizes that this litigation is inherently

*Wallace & Millsap*

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

risky and would take years to reach finality in court. There is a risk that Cintas might prevail in motion practice on merits issues, whether pre-trial, at trial, or on appeal, resulting in substantial delay or no relief for Class Members. The City also would have to certify and maintain a class over Cintas' opposition. While the City maintains that there is a core continuity of practices involving relatively simple issues, Cintas might oppose class certification based on what it considers material differences as to laws applicable to the nationwide Settlement Class, such as differences in state procurement laws and statutes of limitations. Cintas might also argue that individualized issues may have led to PPAs' pricing discrepancies and that those differences would predominate over common issues. Assuming the City succeeds in certifying a class, it would then need to prevail at trial and secure an affirmance on appeal before recovering damages. Ultimately, continued litigation could add several more years before there is resolution. The Court's acceptance and approval of the Settlement is preferable in comparison to the continuation of lengthy and expensive litigation, which would only increase risk of a substantially lower recovery or no recovery at all. The first three factors weigh in favor of preliminary approval of the Settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 2. The Amount Offered in the Settlement Supports Final Approval

In assessing the fourth *Churchill* factor, the settlement amount offered, the Court should consider "the complete package taken as a whole, rather than the

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

Wallace & Millsop

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

individual component parts." *Officers for Just.*, 688 F.2d at 628. In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, the cash settlement amount of $45,000,000 (the "Cash Settlement Amount") is fair, reasonable, and adequate given that it provides the City and Class Members exactly what they seek through this lawsuit, namely, damages for amounts paid for goods and services more than what they were contractually obligated to pay. *See* Settlement Agreement, Ex. A at 15–16 ¶¶ 5.1–5.4. **The Cash Settlement Amount represents approximately 66% of the forecasted $68,507,000 damages incurred by the Settlement Class**, with each Settlement Class Member who submitted a valid claim receiving five (5) percent of its Total Spend on Cintas products and services available under the 2012 and/or 2018 Master Agreements. *See* Settlement Agreement, Ex. A at 15, 19–22 ¶¶ 5.2, 7.1, 7.2.2, 7.4; Mason Decl., ECF No. 114-4 ¶¶ 20–23.

Moreover, the $5,000,000 in Additional Relief for which Cintas agrees to allocate towards implementing meaningful business practice changes provides additional substantial value to the Settlement Class. *See, e.g., In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (approving fund of $1.25 million and injunctive relief to remedy the alleged misconduct in nationwide class action asserting violations of California's UCL and breach of contract).

### 3. The Extent of Discovery and the Stage of the Proceedings Support Final Approval

For the fifth *Churchill* factor, the extent of discovery completed and the stage of the proceedings, "the Court analyzes the degree of case development accomplished prior to settlement in order to determine whether counsel had sufficient appreciation of the merits of the case before negotiating settlement." *Tyus*, 2021 WL 2169928, at *5. "[S]ettlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Carlotti*, 2019 WL 6134910, at *6 (quotation and citation omitted). "[A]s long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Id.*

Here, the parties engaged in discovery of relevant information and Plaintiffs obtained the benefit of expert economic analysis in analyzing the settlement. Thus, "counsel had a good grasp on the merits of their case before settlement talks began." *Rodriguez*, 563 F.3d at 967. Specifically, Cintas provided the City with data showing Cintas's total recorded monthly revenues from 2012 through February 29, 2024 under the 2012 and 2018 Master Agreements ("Revenue Data"). *See* Burns Decl. ¶ 8. Cintas also provided the City with a randomized sample of 100,000 transactions for the top 50 rental products and services sold between April 2012 and August 2022 for customers under the 2012 and 2018 Master Agreements ("Transaction Data"). *See* Mason Decl., ECF No. 114-4 ¶ 20. The Transaction Data reflected all fields necessary to determine a rate of overcharge, including the relevant contract associated with the invoices, item numbers and descriptions, usage codes, rental frequencies, quantities, the prices that should have been charged under the relevant contracts, and the prices

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

that were actually charged. *See id*. The City engaged an expert witness to analyze the Transaction Data, and the parties conferred several times regarding the data and their respective findings. *See id*. at 10, n.4. Where Plaintiff identified issues or concerns with the data, Cintas re-examined the production and updated or provided clarification as needed. *See id*.

Further, a substantial portion of the investigation pertinent to this case took place before the initial complaint was filed. The City's counsel spent months investigating and having experts analyze Cintas's business practices, contracts, and transactions with the City and other municipalities. *See* Burns Decl. ¶ 4. The City therefore had the necessary information to properly assess the value of the Settlement Class's claims and the value of this Agreement to the Settlement Class. Based upon that analysis, and recognizing the substantial risks of continued litigation, the City's counsel reasonably concluded that this Settlement is in the best interest of the Class Members.

**4. The Experience and Views of Counsel Support Final Approval**

The sixth *Churchill* factor, the experience and views of counsel, likewise supports preliminary approval of the Proposed Settlement. "In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Van Lith v. iHeart Media + Ent., Inc.*, Case No. 1:16–cv–00066–SKO, 2017 WL 1064662, at *13 (E.D. Cal. Mar. 20, 2017) (citing *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. Jul. 2, 2013)). Plaintiff's Counsel have extensive experience litigating and settling complex class actions throughout the country. *See* Declaration of Warren Burns in

Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 114-3 ¶ 9. They have negotiated and resolved multiple nine-figure settlements. *See id.* Based on their experience, Plaintiff's Counsel conclude that the Settlement provides exceptional results for the Settlement Class, while avoiding the costs, delays, and uncertainties of continued litigation. *See id.* ¶¶ 11–12. Counsel's recommendation is entitled to "great weight" and further supports a preliminary presumption of fairness. *Van Lith*, 2017 WL 1064662, at *13 (quoting *Adoma v. Univ. of Phoenix*, 913 F. Supp. 2d 964, 977 (E.D. Cal. Dec. 20, 2012)) (internal citation omitted) ("Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation.").

### 5. The Presence of a Governmental Participant Supports Final Approval

The seventh *Churchill* factor, the presence of a governmental participant, is generally assessed by whether the state and federal officials who are provided notice of the proposed settlement raise any objection or concern regarding the settlement. *See In re Linkedin User Priv. Litig.*, 309 F.R.D. at 588–589 (finding that appropriate state and federal officials, having received notice as required by CAFA, not objecting to proposed settlement weighed in favor of approval); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1082 (C.D. Cal. 2010) (finding that 26 states objecting to proposed settlement weighed against approving class action settlement). **The Settlement Administrator directed notice to the Attorneys General of all states and territories and the United States Attorney General on October 18, 2024, and none objected to the settlement.** *See* Lee Decl., ECF No. 116 ¶ 6. This factor supports final approval.

Wallace & Millsap
510 W Plumb Ln., Reno, Nevada / (775) 683-9599

### 6. The Reaction of the Class Supports Final Approval

When analyzing the final *Churchill* factor, the reaction of class members to the proposed settlement, "[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *In re Linkedin User Priv. Litig.*, 309 F.R.D. at 589. *See also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). **Of the 95,032 Class Members, none objected to the settlement and only one opted-out for unexplained reasons.** *See* Lee Decl., ECF No. 116 ¶ 28. This factor supports final approval.

### 7. The Settlement Is Not the Product of Collusion

The Ninth Circuit puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez*, 563 F.3d at 965 (citing *Hanlon*, 150 F.3d at 1027; *Officers for Just.*, 688 F.2d at 625). "The question here is whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion." *Heid v. CyraCom Int'l, Inc.*, Case No. 22-cv-1445-MMA (KSC), 2024 WL 4008650, at *7–8 (S.D. Cal. Aug. 30, 2024). Courts should "be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees

*510 W Plumb Ln., Reno, Nevada / (775) 683-9599*

*Wallace & Millsap*

separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

Here, the parties prepared detailed mediation statements, engaged in extensive negotiations, and appeared for a settlement conference before the Honorable Judge McQuaid before reaching an agreement in principle. *See* Burns Decl. ¶¶ 6–9. Only after months of additional, determined negotiations and the exchange of discovery did the parties reach the proposed Settlement. *See id.* These efforts were unquestionably at arms' length and non-collusive. Indeed, the Court granted eight extensions of the stay to allow Plaintiff to complete its due diligence. *See* ECF Nos. 78, 81, 87, 94, 106, 108, 110, 112. Plaintiff refused to finalize a settlement until its open questions were satisfactorily answered. Moreover, none of the Ninth Circuit's warning signs are present: attorneys' fees were not negotiated separately, Plaintiff's Counsel will request no more than one-third of the settlement amount, there is no "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to Cintas. As this Court previously found, the Settlement Agreement "is the result of extensive, serious, informed, non-collusive, and arm's length negotiations involving experienced counsel familiar with the legal and factual issues of the case." ECF No. 115 at 3.

**C. The Best Notice Practicable Was Given to All Class Members**

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

*Wallace & Millsap*

21

R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Rannis*, 380 F. App'x at 650 (Rule 23(c)(2)(B) "does not necessarily require that every in-state class member 'actually receive' notice.'") (quoting *Silber v. Mabon*, 18 F.3d 1449, 1453, 1454 (9th Cir. 1994)). As to its contents, "'[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Kaupelis v. Harbor Freight Tools USA Inc.*, 2022 WL 2288895, at *7 (C.D. Cal. Jan. 12, 2022) (quoting *Rodriguez*, 563 F.3d at 962).

As discussed *supra* § II.B., the Claims Administrator substantially implemented the Class Notice plan by providing notice through U.S. mail, email, and a dedicated settlement website. The mail notice, re-mail notice, email notice, and email reminder notice to the 95,032 total Class Members resulted in a cumulative successful delivery rate of 92,875 (97.73%) and undeliverable rate of 2,157 (2.27%). *See* Lee Decl., ECF No. 116 ¶ 20. Accordingly, all Class Members have an opportunity to opt-out or object and appear at the Fairness Hearing. Therefore, the notice plan satisfies Rule 23 and comports with due process. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (noting that Rule 23 "does not insist on actual notice to all class members in all cases and recognizes it might be impossible to identify some class members for purposes of actual notice"); *In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App'x 56, 59 (9th Cir. 2021) (affirming the adequacy of notice where not all class members received a direct mailing).

510 W Plumb Ln., Reno, Nevada / (775) 683-9599

Wallace & Millsap

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the Settlement Class and grant its Motion for Final Approval of the Settlement.

Dated this April 10, 2025.                    Respectfully submitted,

/s/Warren Burns

F. McClure Wallace, Esq.
Nevada Bar No.: 10264
Patrick R. Millsap, Esq.
Nevada Bar No.: 12043
**WALLACE & MILLSAP**
510 W Plumb Ln., Ste. A
Reno, Nevada 89509
(775) 683-9599
mcclure@wallacemillsap.com
patrick@wallacemillsap.com

Warren Burns (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

Korey A. Nelson (admitted *pro hac vice*)
Amanda Klevorn (admitted *pro hac vice*)
Natalie Earles (admitted *pro hac vice*)
**BURNS CHAREST LLP**
201 St. Charles Avenue, Suite 2900
New Orleans, LA 70170
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
aklevorn@burnscharest.com
nearles@burnscharest.com

Charles D. Gabriel (admitted *pro hac vice*)
**CHALMERS & ADAMS, LLC**
1409 Silverling Way
Raleigh, NC 27613

Telephone: (678) 735-5903
Facsimile: (678)582-8910
cdgabriel@chalmersadams.com

*Counsel for Plaintiff City of Laurel,*
*Mississippi*